**Shihche Emanuel LIN and Sung–Ping Huang Lin, Appellants,**

v.

**HOUSTON COMMUNITY COLLEGE SYSTEM, Appellee.**

No. 07–96–0341–CV.

Court of Appeals of Texas, Amarillo.

May 27, 1997.

Rehearing Overruled June 24, 1997.

Shihche Emanuel Lin, Houston, pro se.

Bracewell & Patterson, Jeffrey J. Horner, Andrew M. Edison, Houston, for, appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

BOYD, Chief Justice.

In seven points, appellants Shihche Emanuel Lin and Sung–Ping Huang Lin seek reversal of a condemnation judgment in favor of appellee Houston Community College System. In their points, appellants argue (1) the legal description in the original condemnation petition was so inadequate that the trial court lacked jurisdiction of the condemnation proceedings; (2) the description of the condemnation purpose in the condemnor's original petition was so inadequate that the trial court lacked jurisdiction of the condemnation proceedings; (3) appellee had not properly authorized the condemnation at the time it was filed; (4) the trial court lacked jurisdiction of the condemnation proceeding because proper notice of the hearing was not given; (5) the trial court erred in limiting the jury issues to award value only; (6) the jury's verdict was against the great weight and preponderance of the evidence; and (7) the trial court erred in sustaining an objection to evidence of back taxes paid as part of appellants' purchase price of the property. Disagreeing with those challenges, we affirm the judgment of the trial court.

The condemnation proceedings giving rise to this appeal were filed on December 3, 1992, and, on that date, the trial court appointed three commissioners to appraise the value of the property sought to be condemned. On February 11, 1993, appellants filed an instrument denominated "NOTICE OF HEARING ON MOTION TO RESCHEDULE SPECIAL COMMISSIONERS' HEARING CURRENTLY SET ON 16 FEB 93." Concomitantly with the filing of that instrument, appellants filed their "MOTION TO RESCHEDULE SPECIAL COMMISSIONERS' HEARING CURRENTLY SET ON 16 FEB 93" which contained a lengthy "MEMORANDUM OF POINTS AND AUTHORITIES." In that motion, appellants acknowledged they were served with notice of the commissioners' hearing on January 28, 1993. However, they alleged, they immediately requested a resetting of the hearing "due to the lack of legal

representation" and their necessity to attend a hearing before the Armed Services Board of Contract Appeals in Falls Church, Virginia on February 4, 1993. They did not return until February 7, 1993, and thus, they reasoned, they had only nine days to prepare for the special commissioners' hearing. They argued that they could have evaded prompt service by leaving immediately for Virginia but they cooperated in the service of the notice by not doing so. Because the federal hearing was not concluded until February 7, 1993, "the notice of the said hearing was constructively served nine days prior to the hearing date," which, they reasoned, was so short as to deprive them of their due process rights under the federal constitution, and they sought a continuance of the hearing.

The request for a continuance was successfully contested by appellee and the hearing proceeded on February 16, 1993, at which time appellants appeared and participated. As a result of that hearing and on February 16, the commissioners made their report in which they found the value of the condemned property to be $65,000. On March 15, 1993, appellants filed their "DEFENDANTS' FIRST AMENDED OBJECTIONS TO AND APPEAL FROM SPECIAL COMMISSIONERS' FINDINGS AND DEMAND FOR A JURY TRIAL" which stated numerous alleged grounds as a basis for those objections and for the appeal. The case proceeded to trial, as a result of which the jury found the value of the property to be $51,000. Hence, this appeal.

Reiterated, in their first point, appellants challenge the sufficiency of appellee's legal description of their property sought to be condemned. In its original petition, appellee described appellants' property as:

12,625 square feet of land, more or less, being part of Lots 61 and 62, Crescent Island Subdivision, Houston, Harris County, Texas.

The land was additionally described as being "located wholly within the boundaries of the HCC in Harris County, Texas along the north line of N. McGregor Drive, approximately 200 feet west of State Highway 288. Once acquired through these proceedings, the Property will be used for school purposes. It is owned by Shihche Emanuel Lin and Sung–Ping Huang Lin."

■■■ It is well established that jurisdiction of a condemnation proceeding does not attach unless the condemnation petition includes a legally sufficient description of the property sought to be condemned. In the words of our supreme court, the reason for that requirement is "[u]nless the land to be taken is adequately identified, the owner cannot know what portion of his property is required, nor the commissioners what damages to assess, nor can the court by its decree effectively pass title." *State v. Nelson*, 160 Tex. 515, 334 S.W.2d 788, 790 (1960). The sufficiency of the petition's description of the property is tested by the standards used for adequacy of description in a deed. In *Coastal Industrial Water Authority v. Celanese Corp.*, 592 S.W.2d 597, 600 (Tex.1979), the court, quoting *Wooten v. State*, 142 Tex. 238, 177 S.W.2d 56, 57 (1944), noted "[t]he certainty required in the description of the land in a condemnation proceeding 'is of the same nature as that required in conveyances of land, so that a surveyor could go upon the land and mark out the land designated.'" If the description is sufficiently certain that a surveyor could locate the tract, the fact that it might contain "a false and contradictory element of description is harmless." *Boone v. Panola County*, 880 S.W.2d 195, 196 (Tex. App.—Tyler 1994, no writ), quoting *Roberts v. County of Robertson*, 48 S.W.2d 737, 738 (Tex.Civ.App.—Waco 1932, writ ref'd). If the original petition contains a legally sufficient description, the trial court has power to permit amendments "provided this can be done without material prejudice to the landowner." *State v. Nelson*, 334 S.W.2d at 792.

Pointing out that there was a correct metes and bounds description of appellants' property in the county clerk's office as early as 1984 which was included in the deed conveying the property to appellants, they contend the fact that such a metes and bounds description was not contained in the condemnation petition made the description inadequate. Because of the inadequate description, they conclude, the trial court lacked jurisdiction of the condemnation proceedings. As additional support for their position, ap-

pellants point out the portion of the description in the condemnation petition which refers to the property as being located "200 feet west of State Highway 288," when appellants' first amended objections and the trial testimony showed the property was actually located east of State Highway 288. Thus, they reason, "even if the inadequate description of the property which the College sought to condemn could be ignored, the description of the property which the College sought to condemn still was internally inconsistent and ambiguous as to what precise property the college sought to acquire by condemnation." Appellants acknowledge that the trial court later allowed appellee to amend the description in its pleadings, but point out that the court's charge reverted to the original description, while the judgment contained, by incorporation of an exhibit to the judgment, a metes and bounds description inserted by appellee in its fourth amended petition, its live pleading. Therefore, they argue, this kind of "on-again, off-again amendment" emphasizes the wisdom and necessity of requiring a proper description from the outset and making it jurisdictional.

▇▇▇ It is the general rule that a land description in a writing is sufficient if it furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty. *Wilson v. Fisher,* 144 Tex. 53, 56–57, 188 S.W.2d 150, 152 (1945). Thus, if it is shown by extrinsic evidence that a grantor in a deed owns only a single tract answering the description, the land is identified with reasonable certainty. *Kmiec v. Reagan,* 556 S.W.2d 567, 569 (Tex.1977); *see also Pickett v. Bishop,* 148 Tex. 207, 223 S.W.2d 222, 223 (1949) (description of a certain quantity of land out of a larger tract was sufficient when the deed further described the tract as "my property" and extrinsic evidence showed the grantor owned only one tract answering that description, the land was sufficiently identified); *Crockett v. The Housing Authority of the City of Dallas,* 274 S.W.2d 187, 189 (Tex. Civ.App.—Dallas 1954, no writ) (description in condemnation proceeding which included only name of addition to city and lot numbers without block numbers was sufficient where

the condemnee only owned lots so numbered in one block within the addition); *Henderson v. Priest,* 591 S.W.2d 635, 636 (Tex.Civ. App.—Dallas 1979, writ ref'd n.r.e.) (description in divorce decree describing real property awarded wife and which described the property by street name and number as well as the parties' home, was sufficient to pass title when it was shown by extrinsic evidence that the property was the only real property owned by the parties).

▇▇▇ In this case, the record, including appellant Shihche Emanual Lin's testimony, is sufficient to show the property involved in the condemnation was the only property owned by appellants within the Crescent Island Subdivision. The description contained within itself the *means or data* by which the property sought to be condemned could be identified. Thus, under the cited authorities, the original description would be sufficient to pass title in a deed and is, therefore, sufficient to validate the description and vest the trial court with jurisdiction over the proceedings. That being true, it is not necessary to discuss appellants' additional argument about the effect of later vagaries in the land descriptions in the pleadings, the court's charge, and the judgment. This is particularly true as appellants never make any claim that they were confused by those vagaries.

▇▇▇ Appellants' second point challenge is that the description of the condemnation purpose in the original condemnation petition was fatally deficient and insufficient to vest jurisdiction in the trial court. In this regard, without additional specificity, Tex. Property Code Ann. § 21.012(b)(2) (Vernon 1984) requires that the condemnation petition "state the purpose for which the entity intends to use the property." In support of their second point contention, appellants note that the condemnation purpose in the original petition was not set forth *verbatim* but was merely described as being "for school purposes." They argue that description was statutorily inadequate because it does not tell the landowner or the court "anything that is not already obvious from the name of and the (sic) and description of the condemning party," and because "the Legislature demands

an adequate description." Reasoning that condemnation statutes must be strictly complied with in all respects, *City of Bryan v. Moehlman,* 155 Tex. 45, 282 S.W.2d 687, 690 (1955), and recognizing that "[t]his defect was corrected to some extent later," appellants argue that the original lack of specificity "undermines the jurisdiction of the trial court and the commissioners." This is so, they continue, because the condemnor's purpose is "a fact uniquely within the knowledge of the condemnor" and, "[u]nless the condemnor is at least required to state a clear position with respect to the statutory requirement, the condemnee cannot hope to challenge compliance with this statutory requirement."

Appellants do not cite any specific authority supporting their position, however, they suggest that an explication by the court in *City of Houston v. Derby,* 215 S.W.2d 690 (Tex.Civ.App.—Galveston 1948, writ ref'd), is sufficiently analogous to support their position. In that case, as relevant here, the court noted that it was necessary as part of the pleading to acquire jurisdiction, a condemnor must "first allege and then during the proceedings prove, that it had failed to agree with the appellees (condemnees) on the value of their land to be taken." *Id.* at 692.

■■■ It is, of course, established beyond cavil that the written statement or petition is the first step in a condemnation proceeding, it is by virtue of that first step that jurisdiction over the subject matter is acquired, and the pleading must satisfy statutory and constitutional requirements. *State v. Nelson,* 334 S.W.2d at 790; *Hogan v. City of Tyler,* 602 S.W.2d 555, 558 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.). Appellee's purpose pleading was sufficient to meet the statutory requirements necessary to vest jurisdiction in the trial court. We agree with appellee that the court's decision in *Coastal Industrial* is helpful. In that case, in the face of a challenge that it was not specific enough, the court held that a purpose statement that the condemnor wished to acquire a water line easement "for the transportation of water and other facilities and uses incidental thereto" was adequate. 592 S.W.2d at 600. If the purpose statement of a water authority that

it intended to condemn an easement for "the transportation of water," it would be sufficient for a college system to allege its intent to use property for "school purposes." Our conviction is strengthened by the definition of purpose in Black's Law Dictionary 1239 (6th ed.1990), as "[t]hat which one sets before him to accomplish or attain; an end, intention, or aim, object, plan, project. Term is synonymous with ends sought, an object to be attained, an intention, etc."

In *Ex parte Edmonds,* 383 S.W.2d 579, 581 (Tex.1964), in overruling a landowner's complaint that the condemnor's pleading in that case did not properly describe the purpose for which the condemnor proposed to use the condemned property, the court explicated:

> While these may be good exceptions to plaintiff's petition, the proper place to raise them is in the County Court where they are filed. A mere defect in pleadings does not make the proceedings void, as respondents contend. They may be subject to amendment after proper objection has been sustained.

*Id.* at 581. The purpose statement in the condemnation petition was sufficient to cross the jurisdictional threshold and, if appellants could have shown a reasonable need for additional specificity, it could have been done through the normal trial litigation procedures such as by special exceptions, etc. *See id.* and *Coastal Industrial Water Authority,* 592 S.W.2d at 600. Parenthetically, in its fourth amended original petition, its live pleading, with reference to its purpose, appellee more specifically alleged:

> Once acquired through these proceedings, the Property will be used for school purposes. Specifically, the Property will be used as part of the site upon which the HCC will construct a health careers center. The center will be used to educate students for various occupations connected with the health careers industry.

Appellants' second point is overruled.

In their third point, appellants contend that "the trial court and the commissioners lacked jurisdiction because the college did not authorize the condemnation petition before it was filed." Appellee's original peti-

tion was filed on December 3, 1992. In that petition, appellee asserted "the HCC's (appellee) Board of Trustees (Board), its governing body has adopted, at one of its regularly scheduled meetings, a resolution declaring the necessity for acquiring by purchase or condemnation the fee simple title to (the appellant's property)." However, it is uncontroverted that a formal resolution authorizing the condemnation proceeding was not adopted until December 17, 1992. Supporting their challenge, appellants cite the general rule that strict compliance with the statutory and constitutional authorizations for such proceedings is required. They argue it is important that courts must be sure that agents of a governmental body cannot act in the absence of proper authorization from that governmental body, that they sought a delay in the hearing and, it is possible that a petition filed after the resolution would not have gone to a hearing, "so the College may have gained an advantage when the College's attorneys 'jumped the gun' by fifteen days." In response to appellants' argument, appellee points out the affidavit by Britton Ryan that at the time of the inception of this condemnation proceeding, he was employed by appellee as its vice-chancellor and was currently employed by it on a consulting basis. He avers he contacted appellee's attorneys "in late 1992," authorized the filing of the suit, and "explained that the Board would also pass a resolution approving the filing of the lawsuit." Under direct examination, he also testified that he had been authorized to obtain the property for appellee. Continuing, appellee posits that "[t]he fact that the Board resolution came approximately two (2) weeks after the filing of the lawsuit does not void the lawsuit, but rather reaffirms its legitimacy." In support of that ratification theory, appellee cites the holding in *City of Bells v. Greater Texoma Utility Authority*, 790 S.W.2d 6 (Tex.App.—Dallas 1990, writ denied), that although ratification does not have a retroactive effect, a governing board can "again authorize actions which were previously authorized at an invalid meeting." *Id.* at 11. That teaching is applicable here, they reason, because the board's action is evidence of the previous authority of appellee's agents to institute this action.

■ Analyzed, appellants do not argue that appellee lacked condemnation authority, or that its efforts to purchase the property were unsuccessful, nor even that appellee's agents lacked authority to negotiate for the purchase of property, but, rather, argue that their authority to bring the suit was not formally memorialized by a specific resolution prior to the beginning of the suit. Tex. Prop.Code Ann. § 21.012 requires that condemnation suits be brought by an entity empowered to do so. Appellants do not argue that appellee is not such an entity. The averments in appellee's petition are sufficient to invoke the jurisdiction of the trial court. The question whether the bringing of the suit was authorized is not jurisdictional, and if authorization is challenged, may be decided by the court in usual litigation procedures. The record is sufficient to support the trial court's determination that the agents bringing the instant action were properly authorized to do so. Appellants' third point is overruled.

In their fourth point, appellants contend the trial court and the commissioners lacked jurisdiction because "notice of the petition had not been returned." In doing so, they refer to the requirements in Tex. Prop.Code § 21.016 that each party in a condemnation proceeding is entitled to a written notice issued by the commissioners of the time and place of the hearing and that the notice should be returned "on or before the day set for the hearing" with a return showing "how and when it was served." Pointing out that an inspection of the county court's records "indicated that notice has not been returned as of March 3, 1993," they conclude that "it is logical to conclude that notice had not been returned prior to the hearing."

■ It has long been established that the purpose of notice is to advise the parties of the date of the hearing and, if they appear at the hearing and are afforded the opportunity to present their rights, then the kind of notice served upon them, or even no notice at all, becomes immaterial. *Jones v. City of Mineola*, 203 S.W.2d 1020, 1023 (Tex.Civ. App.—Texarkana 1947, writ ref'd) (citing *W.T. Waggoner Estate v. Townsend*, 24

S.W.2d 83, 86 (Tex.Civ.App.—Amarillo 1929, no writ)). It is uncontroverted that appellants appeared at, and participated, in the hearing. Parenthetically, even assuming arguendo that a special appearance such as provided in Texas Rules of Civil Procedure 120a, the record is sufficient to show that the requirements of that rule were not complied with. Appellants' fourth point is overruled.

 The thrust of appellants' fifth point of error is that the trial court erred by not granting appellants' motions in limine, which improperly "cut off" their opportunity to present evidence on a variety of issues, including wrongful taking, notice, and good faith negotiations. This had the result, to quote appellants' brief, that "appellants' property was taken without anyone, including the trial court, having to rule on factual matters relating to the validity of the taking." However, it is well established that the granting or overruling of a motion in limine will not, in and of itself, constitute reversible error. *Hartford Accident & Indemnity Company v. McCardell,* 369 S.W.2d 331, 335 (Tex.1963); *Bifano v. Young,* 665 S.W.2d 536, 541 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Redding v. Ferguson,* 501 S.W.2d 717, 722 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.). The purpose of a motion in limine merely precludes reference to the subject of the motion without first obtaining a ruling on the admissibility of those matters outside the presence of the jury. *Tempo Tamers, Inc. v. Crow–Houston Four, Ltd.,* 715 S.W.2d 658, 662 (Tex.App.— Dallas 1986, writ ref'd n.r.e.). Thus, to be entitled to complain on appeal of the exclusion of evidence, it is necessary to tender the desired evidence, obtain an adverse ruling, and perfect a bill of exception. *Id.* Absent an offer and an adverse ruling, nothing is preserved for appellate review. *Id.* at 662–63. After the trial court granted the motion in limine, appellants never attempted to introduce evidence on those matters or obtain an adverse ruling on any tender of evidence. Although appellants were representing themselves *pro se,* because there cannot be two sets of procedural rules, one for litigants with counsel and one for litigants without counsel, litigants who represent themselves must comply with the applicable procedural rules,

or else they would be given an unfair advantage over litigants represented by counsel. *Mansfield State Bank v. Cohn,* 573 S.W.2d 181, 184 (Tex.1978).

In particular, appellants complain of the failure of the trial court to submit their requested jury questions 1–5 and 9. Those requested questions are:

Do you find by preponderance of evidence that:

1. Plaintiff Houston Community College System ("HCC" hereinafter) wanted to acquire Defendants' property?

The law requires an affirmative action to express such desire be taken by and through duly passed resolution or order before the filing of its petition in condemnation.

2. HCC had made a determination on the purpose of acquiring Defendants' property?

Such purpose shall be stated on a duly passed resolution or order.

3. HCC's taking of Defendants' property was for public use?

Such purpose shall be stated on a duly passed resolution or order.

4. HCC had passed a resolution to condemn Defendants' property before its filing of condemnation petition?

5. HCC's attorney had received authority to proceed with this condemnation proceeding?

* * * * * *

9. HCC had negotiated with good faith with Defendants before filing the condemnation petition?

 Initially, by failing to present evidence and obtain an adverse ruling on the matters about which inquiry was sought, appellants waived any complaint about the absence of the evidence. Because there was no evidence in the record to require a jury decision on those matters, the trial court did not reversibly err in failing to submit those questions. Additionally, requested question 1 and its proposed instruction, and requested questions 4 and 5 relate to a legal question, *i.e.,* whether appellee's agents had the au-

thority to institute the condemnation prior to the date of the resolution ratifying their action. That is a question of law which we have discussed and determined earlier in this opinion.

Requested questions 2 and 3 concern appellee's purpose in seeking the condemnation. Where a statute, such as this one, does not require a distinct showing of necessity, the determination by the condemnor of the necessity for acquiring the property is conclusive, absent fraud, bad faith, abuse of discretion, or arbitrary and capricious actions. *Housing Authority of City of Dallas v. Higginbotham,* 135 Tex. 158, 143 S.W.2d 79, 88 (1940); *Anderson v. Clajon Gas Co.,* 677 S.W.2d 702, 704 (Tex.App.—Houston [1st Dist.] 1984, no writ). The only testimony on appellee's purpose was introduced by appellee and was to the effect that the site would be used for the development of a health careers center and teaching facility. Appellants did not offer any evidence that would support a finding of fraud, bad faith, abuse of discretion, or that appellee acted arbitrarily or capriciously. Requested question nine would query the jury whether appellee had negotiated in good faith prior to instituting the condemnation suit. By appearing before the commissioners, appellants waived the right to complain even if, arguendo, there had been a lack of proper effort by appellee. *City of Mineola,* 203 S.W.2d at 1023. For these reasons, appellants' fifth point of error is overruled.

In their sixth point of error, appellants contend the verdict of the jury was against the great weight and preponderance of the evidence. Appellee's witness Russell McLaughlin, a real estate appraiser, testified that the value of the property on the date in question was $51,000. Appellants called two expert witnesses, Robert Lay–Su, an architectural engineer, and George Kahle, a real estate appraiser. Lay–Su testified the construction value of the property was $47, 956, while Kahle opined the overall value of the property was $122,721.

In considering this type of challenge to a jury verdict, the general rule is that we must examine all the evidence and determine whether the jury's findings are so

against the great weight and preponderance of the evidence as to shock the conscience, or are manifestly wrong and unjust. *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In performing that function, we must bear in mind that this appellate court is not a fact-finder, and we may not pass on the credibility of the witnesses or substitute our judgment for that of the trier of fact even if a different answer could be reached on the evidence. *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). However, although a jury is not bound as a matter of law to accept expert witnesses' testimony, our supreme court has explicated that jurors may not "leap entirely outside of the evidence in answering any question submitted to them." *Callejo v. Brazos Electric Power Cooperative, Inc.,* 755 S.W.2d 73, 75 (Tex.1988). In a condemnation case, the jury is allowed to set the value at any amount between the lowest and the highest value the expert witnesses put in evidence. *State v. Huffstutler,* 871 S.W.2d 955, 959 (Tex.App.—Austin 1994, no writ).

The expert testimony in this case placed values upon the property ranging from $51,-000 to $122,721. The jury chose to accept McLaughlin's valuation, as was their prerogative. Appellants' sixth point is overruled.

In their seventh point, appellants challenge the trial court's exclusion of testimony concerning back taxes they paid in addition to the purchase price of the property. To obtain reversal of a judgment based upon an error of the trial court in admitting or excluding evidence, an appellant must show that the trial court did in fact err and that the error was reasonably calculated to cause, and probably did cause, rendition of an improper judgment. *Gee v. Liberty Mutual Fire Insurance Company,* 765 S.W.2d 394, 396 (Tex.1989). Reversal is ordinarily not required if the evidence in question is not controlling on a material issue dispositive of the case. *Id.*

In this case, the dispositive issue for the jury to determine was the fair market value of the property on February 17, 1993, the date of taking. In a condemnation case, the market value is the price which the prop-

erty would bring when it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity of buying it. *State v. Windham,* 837 S.W.2d 73, 77 (Tex.1992). Because the excluded testimony did not bear on the question of the market value at the time of the taking, its exclusion could not be reasonably calculated to cause an improper judgment nor did its exclusion probably cause rendition of an improper judgment. Appellants' seventh point of error is overruled.

 In their eighth and final point, appellants argue they were entitled to prejudgment interest on the amount of the award. It has long been established that when a condemning authority tenders the amount of the commissioners' award in the registry of the court, it tolls the running of interest, at least to the amount so tendered. *See e.g., Shambry v. Housing Authority of the City of Dallas,* 152 Tex. 122, 255 S.W.2d 184, 185 (1953); *Housing Authority of the City of El Paso v. Lira,* 282 S.W.2d 746, 748–49 (Tex. Civ.App.—El Paso 1955, writ ref'd n.r.e.); *Central Power and Light Company v. Graddy,* 318 S.W.2d 943, 951 (Tex.Civ.App.— Houston 1958, no writ); *City of Amarillo v. Attebury,* 303 S.W.2d 804, 805 (Tex.Civ. App.—Amarillo 1957, no writ). The *rationale* for the rule is that the condemnee may withdraw the deposit and is entitled to the use of the money pending a court determination of his damages. *See e.g., State v. Rogers,* 772 S.W.2d 559, 563 (Tex.App.—Amarillo 1989, writ denied).

 In arguing they are entitled to prejudgment interest, appellants only cited authority is *State v. Enterprise Bank–Houston,* 873 S.W.2d 117 (Tex.App.—Waco 1994, writ denied). That reliance is misplaced. In *Enterprise,* the State filed the condemnation proceeding to take title to 34,650 square feet out of a larger tract containing 42,951 square feet. The commissioners found the value of the 34,650 square foot tract to be $398,475, which amount was deposited in the registry of the court. However, in the course of taking possession after the deposit of the money, the State constructed an edifice which covered the whole 42,951 square foot tract. As a result of the trial, the jury found the value of the 42,951 tract to be $644,265. Although it changed the method of computation, the appellate court affirmed the trial court's award of prejudgment interest on the $245,790 difference between the value found by the commissioners and the value found by the trial jury. Thus, the case actually represents an application of the rules we have set out above.

In this case, the jury found the value of the condemned property to be less than the amount placed by appellee in the court's registry. That being so, appellants are not entitled to prejudgment interest on the amount of the award and the trial court acted correctly in refusing to make such an award. Appellants' eighth point of error is overruled.

In summary, all of appellants' points are overruled and the judgment of the trial court is affirmed.