

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00421-CV

---

SOUTHWESTERN PUBLIC SERVICE COMPANY, APPELLANT

V.

RIDGE RENEWABLES, LLC, APPELLEE

On Appeal from the 64th District Court
Hale County, Texas
Trial Court No. A43616-2012, Honorable Danah L. Zirpoli, Presiding

July 21, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Southwestern Public Service Company appeals from a judgment awarding Ridge Renewables, LLC more than $1 million for bad-faith trespass. SPSC raises five issues on appeal. However, this case turns on whether Ridge met its summary judgment burden on two threshold questions: Did Ridge conclusively prove the original lease's property description violates the statute of frauds? And, did Ridge conclusively prove SPSC's wind lease rights expired in 2017? We answer both questions "No." We therefore reverse the judgment and remand for further proceedings.

This dispute centers on competing claims to wind energy development rights on a 256-acre tract in Hale County, Texas. The jury's substantial damages award to Ridge followed a hotly contested trial. But the jury never decided who held valid rights to harvest the wind. That answer—which formed the basis for the damages award—was determined as a matter of law when the trial court granted Ridge's traditional motion for summary judgment and held that SPSC committed bad-faith trespass.

This case illustrates a fundamental principle of summary judgment practice: the moving party must conclusively establish every element of its claim as a matter of law. Here, because the evidence was not conclusive, we reverse and remand.

## BACKGROUND

In December 1989, Glendale King and his wife Barbara purchased 256 acres in Hale County, Texas. King became the sole owner after Barbara's death.

### The Original Wind Lease and Property Conveyance

On August 24, 2010, King entered into a Wind and Easement Lease Agreement with Hale County Wind Farm, LLC. The lease's property description, which Ridge challenges as inadequate under the statute of frauds, appears in Exhibit A:

*Exhibit A*

*To*

*Hale County Wind Farm, LLC Memorandum of Lease*

*Glendale King- 100%*

*All that real property located in Hale County, Texas containing 256 acres, more or less, described as follows:*

*Tract 1*

*S/PT of E ½ of section 58, Block R, Abstract AB 1695, Hale County, Texas being 256 acres.*

The lease granted exclusive wind development rights with a Development Term ending on the earlier of: (1) HCWF beginning to sell electrical energy, or (2) seven years from the effective date (i.e., August 24, 2017). The lease provided for a potential two-year extension of the Development Term if construction commenced before the 2017 deadline, but stated that without timely construction, "this Lease shall expire and shall no longer be in full force and effect."

Five months later, in January 2011, King conveyed some interests in the property to Kelly and Ronna Smalley. He reserved one-half of the mineral interests and retained a life estate in all "royalties derived from the production of Wind Energy pertaining to the Property" and the "right to lease the Property for Wind Energy production purposes." Under the contract, all wind rights would revert to the Smalleys on King's death. The deed entitled the Smalleys to receive payments for surface damages from wind development.

Subsequent Amendments and Transfers

The lease rights underwent multiple transfers between 2010 and 2020, but two developments are potentially crucial to this dispute. After Hale County Wind Farm assigned its rights to Hale Community Energy, King and HCE executed a July 2015 amendment that modified the 2010 lease terms. The 2015 amendment expressly

replaced the entirety of the Development Term's original expiration provisions but inserted virtually identical language: (a) the date HCE begins selling electrical energy generated by wind turbines, or (b) "the seventh (7th) anniversary of the Effective Date," unless construction timely commenced. The amendment defined "Effective Date" as July 30, 2015.[1]

Following HCE's assignment to Hale Wind Energy, the Smalleys executed a "Second Amendment" with Hale Wind Energy in October 2017, with an effective date of August 23, 2017.[2] The amendment, which King did not sign, purportedly extended the Development Term to August 24, 2020, and replaced the original property description with detailed metes and bounds.

SPSC acquired the lease rights through this chain of assignments and began construction in June 2018. SPSC completed two wind turbines in June 2019 and began producing electricity.

Ridge's Claimed Interests and the Central Dispute

Ridge's competing claim emerged in September 2020, after King executed a Wind Deed and Conveyance to Ridge Renewables, LLC for $30,000. King corrected this conveyance in March 2021. Ridge's theory of ownership depends on King having retained valid wind development rights throughout the intervening decade—rights that

---

[1] The amendment defining "Effective Date" as July 30, 2015, creates one of the contract interpretation disputes central to this case.

[2] HCE assigned its interest to Hale Wind Energy in December 2015. August 23, 2017 is one day before the original 2010 lease was slated to expire.

4

SPSC claims King had leased away through the 2010 agreement and subsequent amendments.

King's 2020 conveyance to Ridge birthed the central legal dispute in this case. If SPSC holds valid lease rights originating from the 2010 agreement and its subsequent amendments, then King granted the same wind development rights twice—first to SPSC's predecessors and then to Ridge. If, however, the 2010 lease violated the statute of frauds or expired in 2017 as Ridge argues, then King retained the authority to convey these rights to Ridge, potentially making SPSC's operations a trespass.

The Lawsuit

Ridge filed suit against SPSC in December 2020. Ridge's petition alleged that the 2010 wind lease expired on August 24, 2017, making SPSC's continued operation of wind turbines an unlawful trespass. Ridge sought both monetary relief—damages for trespass, unjust enrichment, and money had and received—and equitable remedies including injunctive relief, declaratory judgment, and trespass to try title.

In January 2022, Ridge filed a traditional motion for partial summary judgment seeking five declaratory rulings that would establish its superior rights and SPSC's liability:

- Ridge holds exclusive rights to develop wind energy on the property, to lease those rights for development, and to receive all associated revenues;

- The 2010 wind lease either violated the statute of frauds or terminated by its own terms on August 24, 2017;

- The 2017 "Second Amendment" between Hale Wind Energy and the Smalleys carried no legal effect;

5

- SPSC's wind operations constitute ongoing bad-faith trespass, entitling Ridge to damages; and

- The Second Amendment and a 2018 assignment (from Hale Wind Energy to the predecessor of SPSC) create unlawful clouds on Ridge's title.

Ridge's summary judgment motion advanced two alternative theories, both designed to establish that King retained wind development rights until his 2020 conveyance to Ridge. First, Ridge argued that the 2010 lease violated the statute of frauds because its property description was inadequate. Second, Ridge contended that even if the lease was initially valid, it expired on August 24, 2017, without valid extension. Ridge challenged both the 2015 amendment between King and Hale Community Energy (arguing it failed to extend the termination date) and the 2017 "Second Amendment" between the Smalleys and Hale Wind Energy (arguing the Smalleys lacked authority because they owned only surface rights). Under either theory, Ridge argued that King possessed wind development rights when he conveyed them to Ridge in 2020, making SPSC's subsequent operations an actionable trespass.

SPSC filed a timely response opposing Ridge's motion. However, in March 2022, the trial court granted Ridge's motion for summary judgment "in all things" regarding bad-faith trespass, establishing the foundation for all subsequent proceedings.[3]

---

[3] SPSC filed motions for reconsideration in October 2022 and January 2023, which the trial court declined to consider. Because trial courts have no obligation to reconsider partial summary judgment rulings, *see Methodist Hosps. of Dall. v. Corp. Comm's, Inc.*, 806 S.W.2d 879, 883 (Tex. App.—Dallas 1991, pet. denied), we consider only the arguments and evidence from the original summary judgment proceedings. *See Ennis, Inc. v. Dunbrooke Apparel Corp.*, 427 S.W.3d 527, 533 (Tex. App.—Dallas 2014, no pet.).

The case proceeded to a four-day jury trial in May 2023. Because the trial court had declared SPSC's conduct to constitute bad-faith trespass as a matter of law, the court instructed the jury that Ridge was entitled to damages, limiting the jury's role to determining the appropriate amount. The jury unanimously awarded Ridge damages for trespass and established the necessary elements for alternative recovery theories of unjust enrichment and money had and received.

The trial court rendered final judgment in August 2023, awarding Ridge $1,049,634.00 for bad-faith trespass. In the event of reversal on appeal, the judgment provided for cascading alternative recovery theories: should the trespass judgment be set aside on appeal, Ridge would recover the same amount for unjust enrichment; should both theories fail, Ridge would recover under money had and received. The judgment also awarded Ridge $115,848.00 in attorney fees and conditional appellate fees, plus $260,285.66 in pre-judgment interest.

## ANALYSIS

Ridge's successful summary judgment motion serves as the analytical foundation that controlled all subsequent proceedings. To prove trespass to real property, Ridge was required to prove (1) ownership or lawful right to possess real property, (2) SPSC made a physical, intentional and voluntary entry onto Ridge's land, and (3) SPSC's trespass caused injury to Ridge. *See Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied).[4] The trial court's summary judgment ruling that

---

[4] In the context of mineral leases, the Supreme Court requires a defendant claiming good faith in developing a tract of land for oil or gas to "have both an honest and a reasonable belief in the superiority of

SPSC committed bad-faith trespass as a matter of law effectively limited the jury's role to determining damages. Our analysis for SPSC's first issue therefore addresses two threshold questions undergirding Ridge's rights to the property: whether the 2010 lease violated the statute of frauds, and whether the 2010 lease expired without valid extension. We hold that Ridge failed to conclusively prove either the statute of frauds violation or the expiration of the lease as a matter of law. Accordingly, we sustain both parts of SPSC's first issue.

We review a traditional summary judgment de novo. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 218 (Tex. 2022). Ridge, as the summary judgment movant, bore the burden of submitting evidence that conclusively established every element of its claims as a matter of law, leaving no genuine dispute for jury resolution. TEX. R. CIV. P. 166a(c); *2027 S. Austin St., LLC v. LaTour Condominiums, Inc.*, No. 07-19-00395-CV, 2021 Tex. App. LEXIS 2005, at *3 (Tex. App.—Amarillo Mar. 17, 2021, pet. denied). Evidence is conclusive when reasonable people could not disagree in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *Jones v. Energen Res. Corp.*, No. 07-18-00132-CV, 2020 Tex. App. LEXIS 854, at *3 (Tex. App.—Amarillo Jan. 29, 2020, no pet.) (mem. op.). We take as true all evidence favorable to SPSC, the non-movant, and indulge every reasonable inference in its favor. *Cantey Hanger, LLP v. Tyrd*, 467 S.W.3d 477, 481 (Tex. 2015).

---

his title." *Gulf Prod. Co. v. Spear*, 125 Tex. 530, 540, 84 S.W.2d 452, 457 (Tex. Comm'n App. 1935). Typically, this presents a question of fact. *Id.*

Did the 2010 Lease Violate the Statute of Frauds?

Ridge's primary argument challenges the validity of the 2010 lease, contending that its property description violated the statute of frauds and rendered the entire agreement void. In Texas, a valid conveyance of land must satisfy the statute of frauds by adequately describing the land so that the relevant property interests may be identified with reasonable certainty. *See* TEX. BUS. & COM. CODE § 26.01; *ConocoPhillips Co. v. Hahn*, 704 S.W.3d 515, 530 (Tex. 2024).

Texas law reflects a careful balance in applying the statute of frauds to property descriptions. While courts strictly enforce the statute's requirements, they interpret property description language liberally to uphold valid conveyances whenever possible. *Gates v. Asher*, 280 S.W.2d 247, 248 (Tex. 1955). This approach recognizes that the statute's purpose is to prevent fraud, not to invalidate legitimate transactions based on technical description deficiencies.

Property descriptions serve a practical identification function rather than demanding mathematical precision. The description must provide reasonable certainty sufficient to enable a person familiar with the locality to identify the specific property and distinguish it from other parcels. *Reiland v. Patrick Thomas Props.*, 213 S.W.3d 431, 437 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). This practical standard recognizes that property identification depends on context and local knowledge, not abstract geometric precision. While courts cannot use parole evidence to supply missing property descriptions, they may consider other sources of information when the contract specifically references them. A property description satisfies the statute of frauds if "the

instrument furnishes within itself or by reference to other identified writings then in existence the means or data by which the particular land or interest in land to be conveyed may be identified with specific certainty." *Hahn*, 704 S.W.3d at 533. This principle allows parties to create adequate descriptions by combining information from multiple sources, provided the contract itself establishes these connections.

Ridge's summary judgment motion concentrated exclusively on Exhibit A's geographic description, arguing it provided insufficient information about boundaries, shape, or specific location within Section 58. Here is how the property was described in the 2010 wind lease:

*Exhibit A*

*To*

*Hale County Wind Farm, LLC Memorandum of Lease*

*Glendale King- 100%*

*All that real property located in Hale County, Texas containing 256 acres, more or less, described as follows:*

*Tract 1*

*S/PT of E ½ of section 58, Block R, Abstract AB 1695, Hale County, Texas being 256 acres.*

Ridge's approach contains a fundamental flaw: it ignores the ownership statement declaring that Glendale King owns 100% of the leased property. By focusing solely on geographic identifiers while disregarding ownership information, Ridge's evidence fails to consider the complete property description as required under Texas law.

10

Three decisions inform our analysis. In *Pickett v. Bishop*,[5] the Texas Supreme Court addressed a real estate commission agreement describing land as "my property" on one side, and "20.79 acres out of John Stephens 640 acre survey in Tarrant County, Texas" on the reverse. Ignoring the description referring to "my property," this Court affirmed dismissal of the suit, finding the description on the reverse side to be inadequate as a matter of law.[6] The Supreme Court reversed, holding that we had failed to consider the ownership language; "stated ownership of the property is in itself a matter of description which leads to the certain identification of the property." The Supreme Court established the crucial principle that ownership language provides sufficient property identification "when it is shown by extrinsic evidence that the party to be charged owns a tract and only one tract of land answering the description." *Id.* at 223. This principle potentially applies in the present case: King's ownership statement, combined with the general location information, may provide adequate identification if extrinsic evidence shows King owned only one 256-acre tract in the described area.

The Supreme Court reinforced this analytical framework thirteen years later in *Kmiec v. Reagan*, 556 S.W.2d 567 (Tex. 1977). *Kmiec* involved an option to purchase 493.5 acres in Robertson County described in general terms without precise boundaries. The Supreme Court held the description sufficient because evidence established that "the tracts described by the option was all the land [Reagan] owned in Robertson County." The Court reaffirmed *Pickett's* holding: "when the grantor is stated to be the owner of the

---

[5] 148 Tex. 207, 223 S.W.2d 222 (1949).

[6] *Pickett v. Bishop*, 219 S.W.2d 732 (Tex. App.—Amarillo 1949), *rev'd*, 148 Tex. 207, 223 S.W.2d 222 (1949).

property to be conveyed and it is proved that the grantor owns only a single tract answering the description, the land is identified with reasonable certainty." *Id.* at 569.

This Court addressed this framework in *Lin v. Houston Community College System*, 948 S.W.2d 328 (Tex. App.—Amarillo 1997, writ denied). *Lin* involved a condemnation petition describing property as "12,625 square feet of land, more or less, being part of Lots 61 and 62" and identifying the Lins as owners. Despite the description's lack of metes and bounds, we held it satisfied the statute of frauds, explaining that "if it is shown by extrinsic evidence that a grantor in a deed owns only a single tract answering the description, the land is identified with reasonable certainty." *Id.* at 333. Like the two decisions from our highest court, *Lin* demonstrates that Texas courts may uphold property descriptions that combine ownership statements with general location information, even without precise boundary descriptions.

Ridge's summary judgment evidence illustrates the analytical error that undermined its summary judgment approach. Ridge presented deposition testimony from Malcolm Coon, SPSC's corporate representative, focusing exclusively on whether Coon could identify the property using the description language alone:

> RIDGE: Have you ever looked at this particular property description, this exact Exhibit A before today?
>
> COON: Yes.
>
> RIDGE: In terms of locating where within Section 58 the 256 acres would be, using this property description, have you ever tried that?
>
> COON: Not with this property description alone, no.
>
> RIDGE: Do you know based on your work as a right-of-way agent whether *using just the description that comes from Exhibit A* you could locate where within Section 58 specifically the 256 acres are?

12

COON:  I could not.

RIDGE:  Is that a – you couldn't locate the 245 [sic]?

COON:  Correct.

(emphasis added).

This testimony demonstrates why Ridge failed to carry its summary judgment burden.  Ridge needed to prove conclusively that the 2010 lease provided insufficient property description as a matter of law.  *See Piot v. Allstate Vehicle & Prop. Ins. Co.*, No. 02-21-00335-CV, 2022 Tex. App. LEXIS 2555, at *1 (Tex. App.—Fort Worth Aug. 11, 2022, no pet.).[7]  However, Ridge's questioning focused exclusively on whether Coon could identify the tract using description language alone, ignoring the potential identification value regarding King's ownership in the land and available extrinsic evidence.  This approach violates the analytical framework established in our earlier precedent, which requires courts to consider complete property descriptions, not isolated geographic elements.  Ridge never presented evidence addressing whether a person familiar with the locality could use King's ownership statement, combined with the Section 58 location reference, to identify the specific 256-acre tract with reasonable certainty.

Ridge's other argument, in which it compared the 2010 lease's property description with a more detailed version, is equally unavailing.  We rejected this exact methodology in *Lin*, when the defendant attempted to compare a property description with more detailed metes and bounds language found in the clerk's office.  *Lin*, 948 S.W.2d at 332.

---

[7] The burden does not shift to the defendant to come forward with controverting evidence until the plaintiff produces conclusive evidence establishing its right to summary judgment as a matter of law.  *Id.*

13

Ridge's comparison may demonstrate that the 2010 description could be more detailed, not that it violates the statute of frauds as a matter of law.

Ridge's evidence fails to establish the property description's inadequacy as a matter of law because it ignores the established framework for evaluating statute of frauds compliance. Ridge focused exclusively on geographic description elements while disregarding King's ownership statement and its potential identification value. On the other hand, binding precedent requires consideration of complete property descriptions, including ownership statements and general location information. We find that Ridge failed to carry its summary judgment burden of conclusively proving the 2010 lease violated the statute of frauds. TEX. R. CIV. P. 166a(c).

Did the 2010 Lease Expire in 2017?

Ridge alternatively argued that the 2015 amendment failed to extend the Development Term deadline beyond the original expiration date of August 24, 2017. According to Ridge, the 2015 amendment expressly modified only Sections 3.1, 3.2, and 3.3; therefore, the amendment's "Effective Date" of July 30, 2015, did not alter the original start date for the seven-year construction deadline because that definitional language appeared outside the specifically-modified provisions. We disagree and conclude that Ridge's argument, at most, illustrates an ambiguity that precludes summary judgment.

Contract interpretation begins with a fundamental principle: courts must determine the parties' intentions by examining the agreement as a whole and applying the plain, ordinary meaning of contractual language unless context requires otherwise. *Bluestone Nat. Res. II*, 620 S.W.3d at 387; *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310,

14

311–12 (Tex. 2005) (per curiam). This principle requires courts to avoid interpreting contractual provisions in isolation, instead considering how each term relates to the agreement's overall structure and purpose. *See Austin Tr. Co. v. Houren*, 664 S.W.3d 35, 42 (Tex. 2023) (*citing Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005)).

Courts construe unambiguous contracts according to their plain language, not according to what parties claim they intended to say but failed to express clearly. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010); *Goss v. Addax Minerals Fund, LP*, No. 07-14-00167-CV, 2016 Tex. App. LEXIS 4234, at *7–8 (Tex. App.—Amarillo Apr. 21, 2016, pet. denied) (mem. op.). However, when contractual language admits of multiple reasonable interpretations, courts cannot resolve the ambiguity through summary judgment because interpretation becomes a question of fact requiring jury consideration. *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018).

The contractual language demonstrates why Ridge's interpretation is incorrect. The 2010 lease provided in Section 3.1 that the Development Term would continue until the earlier of (a) the Operations Date, or (b) "the seventh (7th) anniversary of the Effective Date," which the 2010 lease defined as August 24, 2010.

The 2015 amendment expressly "deleted and replaced" Sections 3.1, 3.2, and 3.3 "in their entirety." The new Section 3.1 then inserted nearly identical language: the Development Term would continue until the earlier of: (a) the Operations Date, or (b) "the

15

seventh (7th) anniversary of the Effective Date." The 2015 amendment defined "Effective Date" as July 30, 2015.

Ridge argues that despite the 2015 amendment's express deletion and replacement of Section 3.1, the new section's "Effective Date" reference points back to the 2010 lease. This interpretation ignores the parties' deliberate choice to delete and replace the original language entirely. If King and HCE intended to preserve the original 2010 timeline, they could have left Section 3.1 unchanged, cross-referenced the original Effective Date explicitly, or included express language preserving the 2010 construction deadline. Instead, the parties chose to replace former Section 3.1 while simultaneously defining a new "Effective Date" within the same amendment. These choices suggest an intent to modify the timeline rather than preserve it. *See Greenbelt Elec. Co-op., Inc. v. Johnson*, 608 S.W.2d 320, 325 (Tex. App.—Amarillo 1980, no writ).

Ridge additionally argues that recognizing the 2015 "Effective Date" creates inconsistencies throughout the amended agreement, particularly regarding insurance obligations, representations and warranties, hazardous materials provisions, and termination effects. Ridge contends these provisions would "retroactively vanish" under SPSC's interpretation, creating irreconcilable internal conflicts. However, such an argument, at most, supports the conclusion that summary judgment resolution was inappropriate. Contract ambiguity exists when "it is reasonably susceptible to more than one meaning" and cannot "be given a certain or definite legal meaning or interpretation." *Scout Energy Mgmt., LLC v. Taylor Properties*, 704 S.W.3d 544, 547 (Tex. 2024) (*quoting Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). These factual determinations cannot be resolved as a matter of law because they depend on extrinsic evidence about the

16

parties' subjective understanding and objective manifestations of intent during the amendment negotiations. *Koopmann*, 547 S.W.3d at 874.

Trespass to real property requires proof of unauthorized entry upon another's land without consent or legal justification. *See XTO Energy, Inc.*, 584 S.W.3d at 487. Our analysis of the lease validity questions establishes that SPSC's entry onto the property cannot be deemed unauthorized as a matter of law because Ridge fails to conclusively prove whether it possessed superior contractual rights to develop wind energy on the premises. The trial court therefore erred in granting Ridge's summary judgment motion and declaring that SPSC committed bad-faith trespass as a matter of law. These determinations cannot be made without resolution of the underlying interpretation questions we identified above. We sustain SPSC's first issue.

Issues Two through Four

SPSC's next three issues challenge the damage awards for bad-faith trespass, unjust enrichment, and money had and received. These three alternative liability theories share a dispositive common foundation: each depends on proof that SPSC acted without legal authorization to enter and use the property. Our resolution of the lease validity questions in Issue One therefore controls the outcome of all three damage theories. For example, trespass requires unauthorized entry onto another's land. *XTO Energy, Inc.*, 584 S.W.3d at 487. Unjust enrichment requires that SPSC secured benefits which would be unconscionable to retain. *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex.

17

App.—Houston [1st Dist.] 2013, no pet.).[8]  Money had and received requires proof that SPSC holds money which in equity and good conscience belongs to Ridge.  *L'Arte De La Mode, Inc. v. Neiman Marcus Group*, 395 S.W.3d 291, 296 (Tex. App.—Dallas 2013, no pet.).   If SPSC possessed valid lease rights, then its entry onto the property was contractually authorized rather than trespassory, and its receipt of wind energy revenues was contractually justified rather than wrongfully obtained.  The trial court's alternative liability theories cannot survive our Issue One analysis because they all depend on the same foundational determination that Ridge failed to establish conclusively through summary judgment.  We sustain SPSC's Issues Two through Four.

Issue Five—Attorney's Fees

The trial court judgment awarded Ridge $115,848 in attorney's fees plus conditional appellate fees based on Ridge's successful pursuit of declaratory relief.  The jury determined these represented reasonable fees incurred by Ridge "to obtain the Declaratory Judgments" that formed the foundation for the damage awards.

Our resolution of the underlying substantive issues determines the fate of Ridge's attorney's fees award because it was predicated on Ridge's success in obtaining declaratory relief.   We have now rejected both declaratory theories that Ridge successfully pursued at trial and that serve as the foundation for Ridge's attorney's fees recovery.  Texas law recognizes that attorney's fees awards in declaratory judgment actions *may not* survive when the underlying declaratory relief is reversed on appeal.  *See*

_____

[8] Unjust enrichment is unavailable when a valid, express contract governing the subject matter of the dispute exists.  *Id.* at 112.

18

*Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 455 (Tex. 2015); *SAVA Gumarska in Kemijska Industria D.D. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 324 (Tex. App.—Dallas 2004, no pet.) ("[A]fter a declaratory judgment is reversed on appeal, an award of attorneys' fees may no longer be equitable and just."). We sustain SPSC's fifth issue. We reverse the attorney's fees award and remand for reconsideration in light of our disposition on appeal.

## CONCLUSION

We reverse the judgment of the trial court and remand for further proceedings in conformity with this opinion.

Lawrence M. Doss
Justice