REVERSE and REMAND; Opinion Filed January 23, 2013.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-11-01440-CV

L'ARTE DE LA MODE, INC., Appellant

V.

THE NEIMAN MARCUS GROUP, Appellee

On Appeal from the 193rd District Court
Dallas County, Texas
Trial Court Cause No. 09-05138-L

# OPINION

Before Justices Lang-Miers, Myers, and Richter[1]
Opinion By Justice Myers

L'Arte de la Mode, Inc.[2] appeals the post-answer default judgment in favor of The Neiman

Marcus Group. L'Arte brings two issues asserting (1) the trial court erred by overruling L'Arte's

motion for new trial, and (2) the evidence is insufficient to support the award of exemplary damages

against L'Arte. We reverse the trial court's judgment and remand the cause for further proceedings.

---

[1] The Honorable Martin Richter, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

[2] The first word of appellant's name appears throughout the record as both "L'Arte" and "L'Art." The style of the case in the trial court identified appellant as "L'Arte," and appellant identifies itself in its brief as "L'Arte." Accordingly, we refer to appellant as "L'Arte" in this opinion.

# BACKGROUND

Wells Fargo Trade Capital Services, Inc. loaned money to L'Arte, and L'Arte transferred its accounts receivable to Wells Fargo under a factoring agreement. Wells Fargo handled collections on the accounts receivable and credited L'Arte's customers' payments on the receivables to L'Arte's loan account.

In 2007, Neiman Marcus placed several purchase orders with L'Arte totaling over $150,000. On December 12, 2007, Neiman Marcus sent L'Arte a check for $155,644.48. Neiman Marcus canceled the check the next day and then paid the same amount to L'Arte through Wells Fargo in smaller transactions. On March 3, 2008, Neiman Marcus erroneously paid L'Arte through Wells Fargo an additional $155,644.48. Neiman Marcus discovered the mistake on March 25, 2008, but the check had already been cashed and had cleared the bank. Neiman Marcus demanded L'Arte return the overpayment, and L'Arte told Neiman Marcus to work with Wells Fargo on the overpayment issue. In August 2008, Wells Fargo told Neiman Marcus it had credited L'Arte's account for the $155,644.48, and Wells Fargo sent Neiman Marcus documents verifying the credit to the account. Neiman Marcus forwarded this information to L'Arte and demanded a check for the overpayment. Neiman Marcus followed up with L'Arte several times in September and October 2008, but L'Arte responded that it had no record of the original canceled check. L'Arte again told Neiman Marcus to work with Wells Fargo to determine the whereabouts of the money.

Neiman Marcus sued L'Arte on April 29, 2009 for money had and received seeking actual damages for the amount of the overpayment, $155,644.48. Neiman Marcus also sought exemplary damages, alleging L'Arte acted maliciously by receiving and knowingly keeping the funds. L'Arte filed a third party petition alleging Wells Fargo was liable to Neiman Marcus for the $155,644.48 because Wells Fargo received, held, and retained the funds for which Neiman Marcus was suing

–2–

L'Arte. Wells Fargo filed a special appearance, which the trial court granted.[3]

The case was set for trial on August 2, 2011. On June 23, 2011, L'Arte's attorneys filed a motion to withdraw from representing L'Arte because L'Arte had failed to make any payment or submit a payment plan "with respect to the very large amount owed . . . for attorney's fees." The attorneys also requested the trial court continue the case until October 25, 2011 to allow L'Arte time to hire new counsel and prepare for trial. On July 20, 2011, the trial court granted the attorneys' motion to withdraw but denied the request for a continuance, stating, "the Court finds that any prejudice to the Defendant [L'Arte] as a result of its attorney withdrawing at this stage in the litigation is a result of Defendant's own conduct."

The case was not reached for trial on August 2, 2011; however, pursuant to the court's local rule, the case setting applied to the entire week. On August 5, 2011, the trial court called the case for trial, and L'Arte did not appear. Neiman Marcus filed a motion for default judgment and presented evidence on its claim, actual damages, and costs. The court granted Neiman Marcus's motion for default judgment and awarded Neiman Marcus actual damages of $155,644.48 plus prejudgment interest, exemplary damages of $311,288.96, costs, and postjudgment interest.

L'Arte timely filed a motion for new trial, asserting its failure to appear at trial was due to accident or mistake from the withdrawal of its attorneys, of which it asserted it had no notice, and was not intentional or the result of conscious indifference. The trial court denied the motion for new trial by written order.

## MOTION FOR NEW TRIAL

In its first issue, L'Arte contends the trial court erred by denying L'Arte's motion for new

---

[3] *See L'Art de la Mode, Inc. v. Wells Fargo Trade Capital Servs., Inc.*, No. 05-10-00742-CV, 2011 WL 1493988 (Tex. App.—Dallas Apr. 20, 2011, no pet.) (mem. op.) (affirming trial court's judgment granting Wells Fargo's special appearance).

trial. When a trial court grants a default judgment, and the defendant moves for a new trial, the default judgment should be set aside and a new trial granted if the defendant establishes three elements from *Craddock v. Sunshine Bus Lines*: (1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no delay or otherwise injure the plaintiff. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925 (Tex. 2009) (citing *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939)). We review a trial court's refusal to grant a motion for new trial for abuse of discretion. *Id.* at 926. When a defaulting party moving for new trial meets all three elements of the *Craddock* test, the trial court abuses its discretion if it fails to grant a new trial. *Id.*

## Whether the Failure to Appear was Intentional or the Result of Conscious Indifference

L'Arte asserts in its brief that its failure to appear at trial was neither intentional nor the result of conscious indifference because L'Arte did not receive notice that the court had set the case for trial on August 2, 2011, that its counsel had filed a motion to withdraw, or that the court had granted the motion to withdraw. At oral argument, L'Arte's counsel conceded that L'Arte had received notice of the trial setting, but he stated that L'Arte was relying on counsel appearing on its behalf at trial. L'Arte argues that because it had no notice its attorneys had withdrawn from representing it, its failure to appear at trial was not intentional or the result of conscious indifference.

Rule 21a of the Rules of Civil Procedure provides that all notices, other than citation, may be served by delivering a copy to the party either in person, by agent, or by certified or registered mail at the party's last known address. TEX. R. CIV. P. 21a. Rule 21a creates a presumption that a mailed letter, properly addressed and with postage paid, is received by the addressee. *Cliff v.*

*Huggins*, 724 S.W.2d 778, 780 (Tex. 1987). In the absence of evidence to the contrary, the presumption has the force of a rule of law. However, this presumption is not evidence, and it vanishes when evidence is introduced that the notice was not received. *Id.*

L'Arte asserts it did not receive notice of its attorneys' motion to withdraw or of the order granting the motion to withdraw. The record shows L'Arte's attorneys sent notice of the motion to withdraw to L'Arte at its last known address by certified mail. The letter stated the attorneys would send L'Arte notice of the date of the hearing on the motion to withdraw in a separate letter. The attorneys sent L'Arte notice of the date and time for the hearing on the motion to withdraw via regular first class mail. Thus, the presumption of service under rule 21a arose for the notice of the motion to withdraw, but no presumption of service arose for the notice of the date and time of the hearing because it was sent by regular first class mail, not by certified or registered mail. *See Ashworth v. Brzoska*, 274 S.W.3d 324, 331 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

L'Arte's vice president, Elizabeth Prozer, testified in her affidavit that she was L'Arte's primary contact with the attorneys in this case. She stated she never received a copy of the motion to withdraw from the attorneys, nor did she receive from anyone any notice or order allowing L'Arte's attorneys to withdraw. She also stated she reviewed L'Arte's business records and did not find the motion to withdraw, a copy of the order granting the motion to withdraw, "or anything to indicate that such motion or order was received by L'Art De La Mode, Inc." Neiman Marcus did not present any evidence that L'Arte actually received notice of either the motion to withdraw or of the order granting the motion to withdraw. Prozer's affidavit rebuts the presumption of notice of the motion to withdraw.

Generally, a corporation, such as L'Arte, can appear in court only through a licensed attorney. *See Kunstoplast of Am., Inc. v. Formosa Plastics Corp., USA*, 937 S.W.2d 455, 456 (Tex. 1996) (per

curiam). The evidence before the trial court showed L'Arte was not aware on August 2 that it was no longer represented by counsel. Even if a non-attorney corporate representative for L'Arte had been present for the trial setting, the representative's presence would not have constituted an "appearance" at trial by L'Arte. *See Custom-Crete, Inc. v. K-Bar Servs., Inc.*, 82 S.W.3d 655, 659 (Tex. App.—San Antonio 2002, no pet.). The representative could not have objected to Neiman Marcus's evidence, cross-examined Neiman Marcus's witnesses, presented a case for L'Arte, or presented argument to the trier of fact. *See id.* Therefore, even if L'Arte had sent a representative to the trial setting, because L'Arte had no attorneys to represent it, the result would have been the same.

Because the uncontroverted evidence shows L'Arte was unaware on the day of the trial setting that its attorneys had moved to withdraw and had been permitted to withdraw by the trial court, the evidence shows L'Arte was unaware it lacked representation on the day of the trial setting, and its failure to appear at trial was not intentional or the result of conscious indifference. We conclude L'Arte met the first element of *Craddock*.

### Meritorious Defense

The second element of *Craddock* requires the defendant to set up a meritorious defense. A defendant does so by alleging facts that would in law constitute a defense, supporting the allegations by affidavits or other evidence providing prima facie proof that the defendant has such a defense. *See Dolgencorp*, 288 S.W.3d at 928. A meritorious defense is one that would cause, if true, a different result on retrial. *Jaco v. Rivera*, 278 S.W.3d 876, 873 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Once the defendant has met these requirements, controverting evidence offered by the plaintiff should not be considered. *Dolgencorp*, 288 S.W.3d at 928.

To prove a claim for money had and received, a plaintiff must show that a defendant holds

money which in equity and good conscience belongs to the plaintiff. "A cause of action for money had and received is not premised on wrongdoing, but 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'" *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.) (quoting *Everitt v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 860 (Tex. App.—Fort Worth 2005, no pet.)). "A recovery under assumpsit for money had and received does not 'depend on the parties' agreement or intent but rather the law's presumption of a promise of compensation if one receiving another's money would thereby be unjustly enriched.'" *Id.* (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ)).

L'Arte's alleged defense is that Wells Fargo, not L'Arte, holds Neiman Marcus's money. Prozer stated in her affidavit that Wells Fargo had been L'Arte's factor for nineteen years. Under the factoring agreement with Wells Fargo, L'Arte would bill the customer for the merchandise and send the invoice to Wells Fargo for collection of the payment. Wells Fargo would advance L'Arte the amount of the invoice, making a debit to L'Arte's account. When the customer paid the invoice by making the payment to Wells Fargo directly, Wells Fargo would credit L'Arte's account by the amount of the payment. When a customer overpaid, Wells Fargo handled the customer's inquiries about the overpayment. When Wells Fargo determined there was an overpayment, it would return the excess funds to the customer and debit L'Arte's account by that amount. Prozer stated that the usual and customary practice in the garment industry was for the customer to address matters of overpayment with the factor directly. L'Arte had no knowledge of the status of the collection of its accounts receivable.

Prozer stated that L'Arte never received the funds Neiman Marcus mistakenly sent to Wells Fargo. "In fact, L'Art never received those funds. [Wells Fargo] never sent those funds to L'Art.

L'Art has never exercised possession, custody or control over those funds. L'Art has never received any benefit or enrichment from those funds." Prozer also stated that L'Arte played no part in cashing the check and that no one at L'Arte knew Wells Fargo had received and cashed the check. Prozer also stated that even if Wells Fargo had credited the overpayment to its account, Wells Fargo later debited L'Arte's account by the amount of the overpayment. "Therefore, if anyone holds [Neiman Marcus's] mistakenly paid funds and has been benefit[t]ing from the retention of those funds, it is [Wells Fargo] and [Wells Fargo] should return those funds."

This evidence sets up the defense that L'Arte did not receive, hold, or benefit from the funds Neiman Marcus claims, which refutes an element of Neiman Marcus's cause of action for money had and received. This defense, if true, could cause a different result on retrial. Accordingly, we conclude L'Arte has met the second element of the *Craddock* test.

## Injury to Plaintiff

The third element of the *Craddock* test is that the motion for new trial be filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff. *Director, State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 270 (Tex. 1994); *Craddock*, 133 S.W.2d at 126. The goal is to avoid undue delay or injury to the plaintiff by granting the motion that would disadvantage the plaintiff in presenting the merits of its case, such as a loss of witnesses or evidence. *Dolgencorp*, 288 S.W.3d at 929; *Evans*, 889 S.W.2d at 270. Once a defendant has alleged that granting a new trial will not injure the plaintiff, the burden of proof of injury shifts to the plaintiff. *Dolgencorp*, 288 S.W.3d at 929 (quoting *Evans*, 889 S.W.2d at 270).

In this case, L'Arte alleged in its motion for new trial that it agreed to pay Neiman Marcus's reasonable costs and expenses incurred in obtaining the default judgment and that it "is prepared to proceed to trial before a jury." Prozer stated in her affidavit that L'Arte agreed to pay Neiman

Marcus's reasonable costs and expenses in obtaining the default judgment and that L'Arte had always opposed Neiman Marcus's claim and intended to defend itself against those claims.

Neiman Marcus argued to the trial court and asserts on appeal that L'Arte's failure to pay its previous attorneys "casts serious doubt on L'Arte's willingness—or ability—to pay its opponent's costs and attorneys' fees." Neiman Marcus states on appeal that L'Arte has not posted a bond to supersede the judgment against it, which Neiman Marcus argues casts doubt on L'Arte's credibility as to its willingness or ability to reimburse Neiman Marcus's expenses. Neiman Marcus also asserts that it "will suffer continued harm if L'Arte is granted a new trial due to the unlikelihood that its fees incurred in obtaining the default judgment will ever be recovered."

Neiman Marcus's suspicion that L'Arte *might* be unwilling or unable to pay Neiman Marcus's expenses in obtaining the default judgment is not grounds for denying the motion for new trial. As the supreme court stated in *Dolgencorp* and *Evans*, all that is necessary to meet the third element of *Craddock* is that the defendant "allege[] that granting a new trial will not injure the plaintiff." *Evans*, 889 S.W.2d at 270; *see Dolgencorp*, 288 S.W.3d at 929. Here, L'Arte met this requirement by stating in the motion for new trial that it would pay Neiman Marcus's reasonable costs and expenses in obtaining the default judgment and that it was prepared to proceed to trial. The burden then shifted to Neiman Marcus to prove injury. Neiman Marcus presented no evidence that L'Arte lacked the resources or willingness to pay Neiman Marcus's expenses in obtaining the default judgment. Nor did it present evidence of any other injury it would suffer from the granting of the motion for new trial. Neiman Marcus presented no evidence that granting the motion "would disadvantage the plaintiff in presenting the merits of its case, such as a loss of witnesses or evidence." *Dolgencorp*, 288 S.W.3d at 929; *Evans*, 889 S.W.2d at 270. Neiman Marcus does not assert that the trial court lacks authority to provide a remedy should L'Arte fail in its obligation to

–9–

pay Neiman Marcus's reasonable costs and expenses in obtaining the default judgment. The trial court may not deny the motion for new trial based solely on the plaintiff's unsupported allegations that the defendant will not keep its promise to pay the plaintiff's costs and expenses in obtaining the default judgment. We conclude L'Arte met the third element of the *Craddock* test.

Because L'Arte's motion for new trial satisfied all three elements of the *Craddock* test, we conclude the trial court abused its discretion by denying L'Arte's motion for new trial. We sustain L'Arte's first issue. Because of our disposition of the first issue, we do not reach L'Arte's second issue.

## CONCLUSION

We reverse the trial court's judgment, and we remand the cause for further proceedings.


_____
LANA MYERS
JUSTICE


111440F.P05

−10−



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

L'ARTE DE LA MODE, INC., Appellant

No. 05-11-01440-CV      V.

THE NEIMAN MARCUS GROUP, Appellee

Appeal from the 193rd District Court of Dallas County, Texas. (Tr.Ct.No. 09-05138-L).

Opinion delivered by Justice Myers, Justices Lang-Miers and Richter participating.

      In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings. It is **ORDERED** that appellant L'Arte De La Mode, Inc. recover its costs of this appeal from appellee The Neiman Marcus Group.

Judgment entered January 23, 2013.


_____
LANA MYERS
JUSTICE