**Opinion issued May 17, 2022**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-20-00400-CV**

———————————

**SHAWNA NALLEY, Appellant**

**V.**

**RAUL QUEVEDO, Appellee**

---

**On Appeal from the 311th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-30565**

---

## MEMORANDUM OPINION

This is a suit affecting the parent-child relationship ("SAPCR"). Appellee Raul Quevedo filed a petition to modify an order concerning possession of his two children with appellant Shawna Nalley. When Nalley did not timely file an answer

to the modification petition, Quevedo moved for a default judgment. After a brief hearing, the trial court signed a default order modifying Quevedo's possession of the children and requiring Nalley to pay a surety bond.

On appeal, Nalley argues that (1) the trial court erred by refusing to allow her attorney to make an appearance on her behalf in open court during the default hearing; (2) she met the standard required by *Craddock v. Sunshine Bus Lines, Inc.* to set aside the default order, and setting aside the order would be in the best interest of the children; and (3) the trial court improperly required her to pay a surety bond when Quevedo did not request such relief at the default hearing. Because we conclude that Nalley's second issue is dispositive of this appeal, we do not address her first and third issues.

We reverse and remand.

## Background

Nalley and Quevedo have two children together: Amanda, a daughter born in 2009, and Roberto, a son born in 2010.[1] At some point, one of the parties initiated a SAPCR and the trial court signed an order making a child custody determination. In March 2019, Nalley and the children moved to Oklahoma. Quevedo lives in Katy, Texas.

---

[1] In this opinion, we use pseudonyms for the names of the parties' minor children to protect their privacy.

Quevedo filed a petition seeking to modify the child custody order in early 2019. The parties attended mediation in July 2019, and Nalley and Quevedo entered into a Mediated Settlement Agreement ("MSA"). The MSA, which stated that it was binding and irrevocable, contained numerous provisions concerning the rights and duties of the parties with respect to their children. Relevant here, one provision stated that if the parties lived more than 100 miles apart and Quevedo gives Nalley at least fourteen days' advance notice, "he shall have possession of [the children] for one weekend of his choice each calendar year . . . ." This provision required Nalley to deliver the children to Quevedo on Friday night and pick them up on Sunday. Both parties, their counsel, and the mediator signed the MSA. The parties also initialed each page. At the time, Nalley was represented by attorney Laura Franco.

On September 27, 2019, the trial court signed an agreed modification order ("the September 2019 order"). This order followed the MSA and provided:

(e)    Parents Who Reside More Than 100 Miles Apart

Except as otherwise expressly provided in this Possession Order, when Raul Quevedo resides more than 100 miles from the residence of the child, Raul Quevedo shall have the right to possession of the child as follows:

1.    Weekends — Raul Quevedo shall have the right to possession of the children for one weekend of Raul Quevedo's choice each calendar year beginning at 11:30 p.m. on a Friday (or 11:30 p.m. on a Thursday if Friday is a school holiday) and ending at 12:00 p.m. on the following Sunday (or Monday if Monday is a school holiday). Raul Quevedo shall give Shawna Michelle Nalley fourteen days' advanced notice through Appclose preceding a designated weekend.

3

The weekends chosen shall not conflict with the provisions regarding Christmas, Thanksgiving, the child's birthday, and Father's Day possession below.

In November 2019, Quevedo filed a motion for judgment nunc pro tunc, arguing that both the MSA and the September 2019 order were incorrect. He argued that instead of allowing him possession of the children on one weekend of his choice per calendar year, the parties had actually agreed that he would have the right to possession of the children "one weekend per month of [his] choice." He requested that the trial court correct the September 2019 order.

Nalley, now represented by attorney Fred Krasny, filed an answer and requested that the trial court deny the motion for judgment nunc pro tunc because the MSA could not be corrected, and the alleged error in the September 2019 order was not a clerical error that could be corrected via a judgment nunc pro tunc. Nalley requested that the trial court order Quevedo to pay her attorney's fees.

Quevedo filed a second motion for judgment nunc pro tunc on December 30, 2019. This motion was substantively identical to his first motion, but he also included an affidavit from the mediator in which the mediator acknowledged that the MSA contained an error. This motion was set for hearing on January 21, 2020.

On January 20, 2020, Quevedo filed a petition to modify the parent-child relationship. Specifically, he sought to modify the September 2019 order to reflect that, if the parties reside more than 100 miles apart, he shall have the right to

4

possession of the children "one weekend per month of Raul Quevedo's choice." He alleged that the "circumstances of the children, a conservator, or other party affected by the order to be modified have materially and substantially changed" since the date of the MSA, upon which the September 2019 order was based, and that the requested modification was in the children's best interests. He alleged that Nalley might violate the court's order, and he requested that the court require Nalley to execute a bond or deposit security conditioned on her compliance with the possession order. Quevedo also requested the trial court issue temporary orders, a temporary restraining order, and a permanent injunction. The modification petition was filed in the same trial court cause number as the previous modification petition and Quevedo's motion for judgment nunc pro tunc.

The next day, January 21, 2020, the trial court held a hearing on Quevedo's motion for judgment nunc pro tunc. Krasny appeared for Nalley. The trial court denied the motion for judgment nunc pro tunc and ordered Quevedo to pay $1,800 in attorney's fees to Nalley. At this hearing, Quevedo's counsel informed Krasny and the trial court that a motion to modify had been filed, and she requested "that the trial be set on that as soon as possible." Krasny responded that he had not seen a motion to modify. The trial court stated, "I don't know if that's been served. That's certainly not before the Court today." The court later signed a written order denying the motion for judgment nunc pro tunc and awarding Nalley attorney's fees.

As requested by Quevedo in his modification petition, the trial court issued an ex parte temporary restraining order ("TRO") on January 22, 2020. In addition to prohibiting both parties from taking certain actions, the TRO also ordered Nalley to appear before the court on February 26, 2020, to determine whether "[t]he preceding temporary restraining order should be made a temporary injunction pending final hearing," whether "[t]he additional temporary injunction prayed for should be granted," and whether the court should make any further necessary orders.

Nalley was personally served with the modification petition and the TRO at Quevedo's house on January 24, 2020. The return of service was filed on January 27, 2020.

After filing his modification petition, Quevedo moved for reconsideration of the trial court's award of attorney's fees to Nalley. This motion was set for hearing on February 18, 2020.

Nalley was required to answer the modification petition by 10:00 a.m. on February 17, 2020. It is undisputed that she did not file a written answer. At 5:08 p.m. on February 17, Quevedo moved for a default judgment.

On February 18, 2020, the presiding judge of the trial court held a hearing on Quevedo's motion for reconsideration of the attorney's fees award to Nalley and denied the motion. Both Krasny and Quevedo's counsel were present at this hearing.

6

On this same date, the associate judge of the trial court held a hearing on Quevedo's motion for default judgment. Krasny was in the courtroom at the time this hearing began, and he attempted to appear on Nalley's behalf. Krasny acknowledged that he had not filed an answer to the modification petition, but he argued that a show cause hearing was scheduled for February 26, 2020, and "it's ridiculous to try to do a default before the show cause is done."

After Krasny tried to object to the court's hearing testimony from Quevedo, the associate judge stated that because Krasny had not filed anything in the modification proceeding, he would not "be on the record on this case" and he was "not in this case." Krasny stated that he had "an answer this morning which I can hand to the Court," but the associate judge directed Quevedo's counsel to proceed with questioning Quevedo. Quevedo provided brief testimony concerning the error in the MSA and September 2019 order and agreed with his counsel that modifying the order would be in the children's best interest. After confirming that the return of service had been on file for ten days and Nalley had not filed an answer, the associate judge orally granted a default judgment on the modification petition. The associate judge signed a written default order granting Quevedo's requested modification on February 20, 2020. This order required Nalley to post a $1,000 cash or security bond payable to Quevedo, conditioned on her "compliance with the order permitting possession of or access to the children."

On March 12, 2020, Nalley filed a timely motion for new trial seeking to set aside the default order. Among other arguments, Nalley argued that the default order was improper because Quevedo presented no evidence of a material and substantial change in the children's circumstances from the time of the September 2019 order to the time of the default hearing, nor did he present evidence that the requested modification was in the children's best interests. She argued that her failure to file an answer was not intentional or due to conscious indifference because she and her attorneys mistakenly believed that a response to the modification petition needed to be filed by February 26, 2020, the date of the scheduled temporary injunction hearing. She argued that she could establish all three elements of *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. [Comm'n Op.] 1939), entitling her to a new trial. Nalley filed an affidavit in support of her motion for new trial.

The trial court did not rule on Nalley's motion for new trial, which was overruled by operation of law. This appeal followed.

**Motion to Set Aside Default Judgment**

In her second issue, Nalley argues that her motion for new trial met the *Craddock* requirements for setting aside the trial court's default judgment. She additionally argues that Quevedo failed to establish a material and substantial change in the children's circumstances and that the requested modification was in the

children's best interest. We address this issue first because it is dispositive of Nalley's appeal.

## A. *Standard of Review*

We review a trial court's denial of a motion for new trial for an abuse of discretion. *In re Marriage of Sandoval*, 619 S.W.3d 716, 721 (Tex. 2021) (per curiam); *Lynch v. Lynch*, 540 S.W.3d 107, 121 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). The trial court abuses its discretion if it acts without reference to any guiding rules or principles, or if it acts arbitrarily or unreasonably. *Imkie v. Methodist Hosp.*, 326 S.W.3d 339, 344 (Tex. App.—Houston [1st Dist.] 2010, no pet.). We may not substitute our judgment for that of the trial court unless its decision was so arbitrary that it exceeded the bounds of reasonableness. *Id.*

The trial court's discretion is limited if the party moving for a new trial establishes the three elements stated in *Craddock*. *In re Marriage of Sandoval*, 619 S.W.3d at 721. A trial court must set aside a default judgment if (1) the failure of the defendant to answer before judgment was not intentional or the result of conscious indifference on her part, but was instead due to a mistake or an accident; (2) the motion for new trial sets up a meritorious defense; and (3) granting the motion will "occasion no delay or otherwise work an injury to the plaintiff." *Id.* (quoting *Craddock*, 133 S.W.2d at 126); *Sutherland v. Spencer*, 376 S.W.3d 752, 754 (Tex.

2012) (noting that trial court is required to set aside default judgment if defendant establishes *Craddock* elements).

## B.    *Analysis*

### 1.    Whether Nalley's failure to answer was intentional or the result of conscious indifference

The first element for setting aside a default judgment under *Craddock* is whether the failure to file an answer was intentional or the result of conscious indifference or was instead due to an accident or a mistake. *In re Marriage of Sandoval*, 619 S.W.3d at 721. A defendant satisfies this element when her factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the plaintiff does not controvert the factual assertions. *Sutherland*, 376 S.W.3d at 755; *In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006) (per curiam). In determining if the defendant's factual allegations are controverted, we look to all the evidence in the record. *In re R.R.*, 209 S.W.3d at 115.

Failing to file an answer either intentionally or due to conscious indifference means that the defendant knew that she was sued "but did not care." *Sutherland*, 376 S.W.3d at 755 (quoting *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 576 (Tex. 2006) (per curiam)); *see Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995) (per curiam) (stating, in context of case dismissed for want of prosecution, that failure to appear is not intentional or result of conscious indifference "merely because it is deliberate; it must also be without adequate

10

justification"). Conscious indifference "means more than mere negligence." *Smith*, 913 S.W.2d at 468.

Generally, some excuse, although not necessarily a good one, will be sufficient to show that a defendant's failure to answer was not because she did not care. *Sutherland*, 376 S.W.3d at 755 (quoting *In re R.R.*, 209 S.W.3d at 115); *Fid. & Guar. Ins. Co.*, 186 S.W.3d at 576 ("An excuse need not be a good one to suffice."); *Mahand v. Delaney*, 60 S.W.3d 371, 374 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("Even a slight excuse may justify a new trial."). A mistake of law may be sufficient to satisfy the first *Craddock* element, but not every act of a defendant that can be characterized as a mistake of law is a sufficient excuse. *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 84 (Tex. 1992). To determine if the defendant satisfied her burden on this element, we must look to her knowledge and actions. *Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 309 (Tex. 2012) (per curiam).

Here, Quevedo filed a petition to modify the September 2019 order on January 20, 2020. Two days later, on January 22, 2020, the trial court granted an ex parte TRO. Among other things, the TRO ordered Nalley to appear before the court on February 26, 2020, to determine whether the TRO should become a temporary injunction pending final hearing. Quevedo served Nalley with the modification

petition and the TRO on January 24, 2020. The return of service was filed on January 27, 2020.

Appearance day for Nalley was February 17, 2020, nine days before the scheduled temporary injunction hearing. It is undisputed that she did not file a written answer by 10:00 a.m. on this date. As a result, Quevedo moved for a default judgment[2] that same day, and the associate judge of the trial court held a hearing on that motion the next day, February 18, 2020. Also on February 18, 2020, counsel for the parties appeared before the presiding judge of the trial court on Quevedo's motion for reconsideration of the attorney's fees awarded to Nalley in conjunction with the denial of his motion for judgment nunc pro tunc. That motion was denied by the presiding judge on February 18, 2020. On February 20, 2020, the associate judge signed an order granting Quevedo's motion for default judgment and modifying the September 2019 order.

Nalley timely filed a motion for new trial on March 12, 2020. In this motion, she asserted several substantive reasons why the trial court erred in modifying the September 2019 order. She also asserted that she had met the three elements under *Craddock*. With respect to the first element, she argued that after Quevedo served her with the modification petition and the TRO, her attorneys in Texas and

---

[2] There is no indication in the record that this motion was served on Nalley. However, Nalley does not raise an appellate issue arguing that Quevedo did not give her notice of the default hearing or raising a due process challenge.

Oklahoma began working on an affidavit under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") to be filed in response to Quevedo's modification petition and began preparing "for a case to be filed in Oklahoma." *See* TEX. FAM. CODE 152.209(a) (requiring each party in child custody proceeding when not all parties reside in Texas to provide, in first pleading or attached affidavit, information to trial court concerning child's present address, places child has lived in previous five years, names and addresses of persons with whom child has lived, and proceedings concerning custody and visitation). Nalley argued that a show cause hearing was scheduled for February 26, 2020, and her attorneys "believed that would be the hearing date."

Nalley supported her motion for new trial with an affidavit and her own UCCJEA affidavit that set out the information required by Family Code section 152.209. She averred that she was served with the modification petition and the TRO on January 24, 2020, and that the TRO required her to be in court on February 26, 2020. She further averred as follows:

> I immediately contacted both my Texas attorney, Fred Krasny, and my Oklahoma attorney, Sean Huffman.
>
> They both began working on a Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) Affidavit to be attached to my first filing after I was served in Texas. In addition, Mr. Huffman began working on my Oklahoma UCCJEA Affidavit, filing a case for me in Oklahoma and contacting the Choctaw Nation of which my children and I are enrolled members.
>
> . . . .

13

> The reason there was no appearance or answer by me before the default hearing was I believed, as did my attorneys, that the response to the lawsuit, including the UCCJEA affidavit, had to be filed before the February 26, 2020, hearing, the date ordered by this Court.

Quevedo did not file a response to Nalley's motion for new trial or any controverting evidence.

The Family Code provides that the Rules of Civil Procedure "applicable to the filing of an original lawsuit" apply to a modification proceeding. TEX. FAM. CODE § 156.004. The Family Code includes no provisions altering the deadline for filing an answer in modification proceedings, and Nalley agrees on appeal that her answer was due by 10:00 a.m. on February 17, 2020. Nalley, however, presented evidence that while she and her attorneys were aware that a response to Quevedo's modification petition was required, they mistakenly believed that the response was due before February 26, 2020, the date the trial court had set for a hearing on whether the TRO should become a temporary injunction and whether further injunctive relief was warranted. This hearing was scheduled for nine days after Nalley's answer date. Nalley averred that after she was served with Quevedo's modification petition, her Texas and Oklahoma attorneys were working on preparing the affidavit required by Family Code section 152.209, which would have been filed with her response to the petition.

14

We conclude that Nalley presented evidence, uncontroverted by Quevedo, that her counsel intended to respond to the modification petition but mistakenly believed that an answer filed before the scheduled hearing date on February 26 would be sufficient. This excuse, although not necessarily a good excuse, demonstrates that Nalley's failure to timely answer the modification petition was not because she knew that she had been sued "but did not care." *See Sutherland*, 376 S.W.3d at 755; *Mahand*, 60 S.W.3d at 374 ("Even a slight excuse may justify a new trial."); *see also Smith*, 913 S.W.2d at 468 (stating that conscious indifference "means more than mere negligence"). We conclude that Nalley satisfied the first element of *Craddock* and established that her failure to answer was not intentional or the result of conscious indifference.

## 2. Whether Nalley's motion for new trial set up a meritorious defense

The second element that a defendant must satisfy under *Craddock* is that the motion for new trial must set up a meritorious defense. *In re Marriage of Sandoval*, 619 S.W.3d at 721. A defendant sets up a meritorious defense if the facts alleged in the movant's motion and any supporting affidavits set forth facts which in law constitute a meritorious defense, regardless of whether those facts are controverted. *In re R.R.*, 209 S.W.3d at 116. "Setting up a meritorious defense does not require proof 'in the accepted sense.'" *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 927–28 (Tex. 2009) (per curiam) (quoting *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex.

15

1966)). A meritorious defense is one that, if true, would cause a different result on retrial. *L'Arte De La Mode, Inc. v. Neiman Marcus Grp.*, 395 S.W.3d 291, 296 (Tex. App.—Dallas 2013, no pet.).

As both parties have acknowledged, in family law cases involving children, "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE § 153.002. Unlike in "traditional" civil cases, conservatorship and custody cases involve more than just the interests of the plaintiff and the defendant; they also involve the interest of the children, which "is of paramount importance." *Williams v. Williams*, 150 S.W.3d 436, 446 (Tex. App.—Austin 2004, pet. denied). When determining what is in the best interest of the children, the trial court "should ensure that it is as well-informed as the circumstances allow," and a determination is "rarely well-informed without consideration of the evidence and the perspective of the parents." *Id.* "[T]he best interest of the child requires that issues be as fully developed as possible, and technical rules of pleading and practice are not of controlling importance." *Id.*; *Lohmann v. Lohmann*, 62 S.W.3d 875, 879 (Tex. App.—El Paso 2001, no pet.) ("Compared to the best interest of the child, technical rules of pleading and practice are of little importance in determining child custody issues.").

16

Generally, in a no-answer default, the defaulting defendant "admits all facts properly pled in the plaintiff's petition except for the amount of unliquidated damages." *Dolgencorp of Tex.*, 288 S.W.3d at 930. Thus, if the facts set out in the petition allege a cause of action, the default judgment conclusively establishes the defendant's liability. *Dodd v. Savino*, 426 S.W.3d 275, 292 (Tex. App.—Houston [14th Dist.] 2014, no pet.). However, this general rule is limited in divorce cases by Family Code section 6.701, which provides that "[i]n a suit for divorce, the petition may not be taken as confessed if the respondent does not file an answer." TEX. FAM. CODE 6.701; *Agraz v. Carnley*, 143 S.W.3d 547, 552 (Tex. App.—Dallas 2004, no pet.). In a divorce case, if the respondent does not answer or appear, "the petitioner must present evidence to support the material allegations in the petition," and a default judgment of divorce "is subject to an evidentiary attack on appeal." *Agraz*, 143 S.W.3d at 552.

Several of the intermediate appellate courts have applied section 6.701 beyond divorce proceedings to include orders in the child custody and visitation context, including modification orders. *See, e.g.*, *In re J.M.M.*, 549 S.W.3d 293, 296–97 (Tex. App.—El Paso 2018, no pet.); *In re A.S.*, 241 S.W.3d 661, 664 (Tex. App.—Texarkana 2007, no pet.); *Giron v. Gonzalez*, 247 S.W.3d 302, 308 (Tex. App.—El Paso 2007, no pet.); *Agraz*, 143 S.W.3d at 552–53; *Considine v. Considine*, 726 S.W.2d 253, 254 (Tex. App.—Austin 1987, no writ); *Davis v. Ross*, 678 S.W.2d

636, 638 (Tex. App.—Houston [14th Dist.] 1984, no writ); *Armstrong v. Armstrong*, 601 S.W.2d 724, 725–26 (Tex. App.—Beaumont 1980, writ ref'd n.r.e.); *see also Dobyanski v. Breshears*, No. 01-17-00407-CV, 2018 WL 2049345, at *2 (Tex. App.—Houston [1st Dist.] May 3, 2018, no pet.) (mem. op.) ("A default judgment in a child-support . . . modification case must be supported by legally sufficient evidence.").

Family Code section 156.101, which governs modification of orders providing for conservatorship or possession and access to children, requires proof of specific elements before a modification can be granted. *See* TEX. FAM. CODE 156.101(a); *Agraz*, 143 S.W.3d at 552–53. In addition to proving that the circumstances of a child or conservator have materially and substantially changed since rendition of the prior order, the party seeking modification must also prove that the modification would be in the best interest of the child. TEX. FAM. CODE § 156.101(a); *see also Considine*, 726 S.W.2d at 254 (construing predecessor version of statute which expressly required court to hold hearing before granting modification and noting that "hearing" implied "the admission and consideration of proof—the opposite of taking allegations of the motion for modification 'as confessed for want of an answer'").

To prove that a material change in circumstances has occurred, the petitioner must demonstrate what conditions existed at the time of entry of the prior order

compared to the circumstances existing at the time of the hearing on the modification petition. *Nellis v. Haynie*, 596 S.W.3d 920, 926 (Tex. App.—Houston [1st Dist.] 2020, no pet.). "Without both historical and current evidence of the relevant circumstances, 'the court has nothing to compare and cannot determine whether a change has occurred.'" *Id.* (quoting *Zeifman v. Michels*, 212 S.W.3d 582, 594 n.1 (Tex. App.—Austin 2006, pet. denied)).

Our sister courts have held that it is not enough for a modification petition to merely allege that a material and substantial change in circumstances has occurred and that the modification will be in the best interest of the child. Instead, even if the respondent defaults, the petitioner "must prove up the required allegations of the motion to modify." *Considine*, 726 S.W.2d at 254; *see In re A.S.*, 241 S.W.3d at 664; *Agraz*, 143 S.W.3d at 553; *see also Giron*, 247 S.W.3d at 308 ("[I]n an appeal from a default judgment modifying an order establishing conservatorship or possession and access, the movant must prove up the required allegations to modify the existing suit affecting and establishing the parent-child relationship.").

Here, in his modification petition, Quevedo alleged that "the circumstances of the children, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of the signing of the mediated settlement agreement on which the order to be modified is based" and the "requested modification will be in the best interests of the children" Quevedo requested that the

September 2019 order be modified to reflect that, if the parties live more than 100 miles apart, he has the right to possession of the children one weekend per month of his choice, as opposed to one weekend per calendar year of his choice. Quevedo attached an affidavit in which he explained the purported error in the MSA and the September 2019 order. Quevedo also averred that "[t]he result of this error has been very stressful for me and my children" and that Nalley's denial of his possession one weekend per month "has caused irreparable damage to the emotional well-being of myself and my children."

The following testimony by Quevedo upon questioning by his counsel at the default hearing is the extent of the evidence that the trial court heard on the request for modification:

Q: Do you have any children with your ex-wife?

A: Yes, we do.

Q: And what are their names?

A: [Amanda] and [Roberto].

Q: Okay. And are you asking this court today—you have a standard possession order right now; and there's an error in the standard possession order, correct?

A: There is.

Q: And that error is that you have one weekend per month or one weekend per year—

A: Per year. Yes, ma'am.

Q: —if she lives more than—

A: 100 miles.

Q: —100 miles away?

A: Yes, ma'am.

Q: Are you asking this court for a standard possession order to where you get your child for one weekend per month—

A: Yes, ma'am.

Q: —according to this standard possession order with everything else the same in the prior order?

A: Yes, ma'am.

Q: That's the only change we're making, correct?

A: Yes, ma'am.

Q: Is that in the best interest of the children?

A: It is in the best interest.

Quevedo's counsel represented that the return of service had been on file for ten days and Nalley had not filed an answer. The trial court orally granted a default judgment.

In her motion for new trial, Nalley argued that Quevedo did not prove that a material and substantial change in the children's circumstances or the parties' circumstances had occurred since the rendition of the September 2019 order. Instead, Quevedo only testified that there was an error in the standard possession order. Quevedo did not testify concerning the circumstances at the time of the September 2019 order and he did not testify concerning the circumstances at the time of the modification petition.

Nalley further argued that Quevedo presented no evidence that the requested modification was in the children's best interest. In her supporting affidavit, Nalley

21

averred that the children had moved to Oklahoma in March 2019, and their residence was approximately a seven-hour drive from Quevedo's residence in Katy. The children spent a total of fourteen hours in the car traveling, spent less than 48 hours with Quevedo, stayed with him in a house with ten other people, and arrived back in Oklahoma approximately five hours before they were required to wake up for school on Monday morning. Nalley averred that the children are "resentful" of the time they have to spend away from their friends in Oklahoma; the visitations do not improve their relationship with Quevedo; and they do not enjoy staying in his "crowded" house. She argued that the modification was not in the children's best interest.

We conclude that Nalley's motion for new trial set up a meritorious defense. Specifically, Nalley argued that the trial court erred by granting Quevedo's requested modification because Quevedo did not present evidence of the children's circumstances at the time of the September 2019 order, he did not present evidence of a material and substantial change in the children's circumstances, and her affidavit testimony demonstrated that the requested modification would not be in the children's best interest. *See Nellis*, 596 S.W.3d at 926 (stating that petitioner requesting modification of custody or conservatorship order must present evidence of circumstances at time of prior order and circumstances at time of hearing on modification request); *see, e.g.*, *Giron*, 247 S.W.3d at 308 (stating that even if respondent defaults, petitioner in modification proceeding must prove up required

22

allegations to modify order in SAPCR). Nalley's argument is supported by the record from the default hearing, which reflects that Quevedo did not testify about the children's circumstances—either at the time of the September 2019 order or at the time of the hearing—and only stated in a conclusory manner that the requested modification would be in the children's best interest.

Taking the facts alleged in Nalley's motion for new trial and her supporting affidavit as true, we conclude that Nalley has set up a defense that would cause a different result on retrial. *See L'Arte De La Mode, Inc.*, 395 S.W.3d at 296. Nalley has therefore established the second *Craddock* element.

### 3. Whether granting a new trial would cause delay or injure Quevedo

Finally, the third element that a defendant must satisfy under *Craddock* is that granting a motion for new trial and setting aside the default judgment must not occasion a delay or otherwise cause injury to the plaintiff. *In re Marriage of Sandoval*, 619 S.W.3d at 721. For this element, relevant considerations include whether the defendant timely files a motion for new trial and alleges that granting a new trial would not cause delay or otherwise injure the plaintiff. *In re R.R.*, 209 S.W.3d at 116. If a defendant alleges that granting a new trial will not injure the plaintiff, the burden shifts to the plaintiff to present proof of injury. *Id.* The purpose of this element of *Craddock* is to protect the plaintiff against the sort of undue injury or delay that would result in a disadvantage when presenting the merits of the case

in a new trial, such as the loss of witnesses or other valuable evidence. *Dolgencorp of Tex.*, 288 S.W.3d at 929.

Here, the default hearing occurred on February 18, 2020, less than one month after Quevedo filed his modification petition, and the associate judge signed the written default judgment two days later, on February 20, 2020. Nalley timely filed a motion for new trial seeking to set aside the default judgment on March 12, 2020. *See* TEX. R. CIV. P. 329b(a) ("A motion for new trial, if filed, shall be filed prior to or within thirty days after the judgment or other order complained of is signed."). In her motion, Nalley argued that "[t]here will not be an injury to Quevedo because the order he obtained is demonstrably not in the best interests of his children." She also stated that she is "ready and prepared to try this matter." Quevedo did not respond to Nalley's motion for new trial and therefore did not present any controverting argument or evidence.

Nalley sought to set aside the default judgment less than thirty days after the trial court rendered the judgment. She asserted that granting a new trial would not injure Quevedo, and she represented that she was prepared to try the merits of the modification proceeding immediately. Quevedo did not present argument or evidence proving that he would be injured by granting a new trial. *See Dolgencorp of Tex.*, 288 S.W.3d at 929 (stating that once defendant asserted that granting new trial would not injure plaintiff, burden shifted to plaintiff to prove injury). There is

no indication in the record that upon granting a new trial—and thus requiring Quevedo to meet his statutory burden to establish that a modification of the September 2019 order is warranted—witnesses or evidence would be lost, causing disadvantages and prejudice to Quevedo in the presentation of his case. *See id.* (stating that purpose of this *Craddock* element is to protect plaintiff against "the sort of undue delay or injury . . . such as a loss of witnesses or other valuable evidence").

We conclude that Nalley established the third element of *Craddock*. *See L'Arte De La Mode, Inc.*, 395 S.W.3d at 297 ("[A]ll that is necessary to meet the third element of *Craddock* is that the defendant 'allege[] that granting a new trial will not injure the plaintiff.'") (quoting *Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 270 (Tex. 1994)). Because Nalley established all three elements of the *Craddock* test, the trial court had no discretion to refuse to grant her motion for new trial seeking to set aside the default judgment rendered against her. *See In re Marriage of Sandoval*, 619 S.W.3d at 721; *Sutherland*, 376 S.W.3d at 754. We hold that the trial court erred by not granting her motion for new trial.

We sustain Nalley's second issue.

**Conclusion**

We reverse the judgment of the trial court and remand for further proceedings.

April L. Farris
Justice

Panel consists of Chief Justice Radack and Justices Countiss and Farris.